```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

SHANNON M. HUFF,
n/k/a SHANNON M. FROEHLER
          Plaintiff,      **No. 6:17-cv-06860-MAT**
   -vs-                      **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,

          Defendant.

**INTRODUCTION**

    Shannon M. Huff, n/k/a Shannon M. Froehler ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. #9, 15.

**BACKGROUND**

  **A. Procedural History**

    Plaintiff filed applications for DIB and SSI on March 8, 2014, alleging disability beginning May 20, 2012. Administrative Transcript ("T.") 183-195. Plaintiff's applications were initially denied on May 6, 2014, and Plaintiff filed a timely

request for a hearing before an Administrative Law Judge ("ALJ"). T. 79-98, 107-09.

At Plaintiff's request, a video hearing was conducted on May 13, 2016 by the ALJ in Baltimore, MD and Plaintiff appeared in Rochester, NY. Plaintiff appeals from the May 26, 2016 decision of the ALJ following a video hearing during which Plaintiff testified without counsel[1] and a Vocational Expert also testified. The ALJ found the claimant not disabled from May 20, 2012 through the date of the decision. T. 51-78. On October 20, 2017, the Agency's Appeals Council denied Plaintiff's request for review and the ALJ's decision thus became the final decision subject to judicial review. T. 1-6. This action followed.

**B. The ALJ's Decision**

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims. See 20 CFR §§ 404.1520(a)(4), 416.920(a)(4).

At step one of the evaluation the ALJ found that while the Plaintiff worked after the alleged disability onset date, the Plaintiff only worked part-time, and Plaintiff's earnings did not exceed the amount required to be "substantial" under the

---

[1] Plaintiff received a two and one half-month continuance on February 23, 2016 in order to obtain counsel. However, counsel did not appear at the May 13, 2016 hearing, but did file on July 11, 2018 an extensive and comprehensive brief on behalf of the Plaintiff seeking reversal of the ALJ's decision.

regulations as a self-employed manicurist. 20 CFR §§ 404.1575, 416.975.

At step two of the analysis, the ALJ found Plaintiff suffered from the following severe impairments: ulnar neuropathy, degenerative disc disease, sacroiliitis, obesity, personality disorder, bipolar disorder, generalized anxiety disorder, and polysubstance abuse. T. 13; see 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ did not find the Plaintiff's asthma or headaches to be "severe." T. 13; see 20 CFR §§ 404.1522, 416.922.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. See 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ considered whether the Plaintiff's conditions met or medically equaled Listing 1.04, 11.14, 12.04, 12.06, 12.08, and 12.09. T. 13-14. The ALJ noted a mild restriction in activities of daily living due primarily to mental impairment, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation. T. 14-15.

Before proceeding to step four, the ALJ found that the Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except the Plaintiff can lift and carry twenty

3

pounds occasionally and ten pounds frequently; stand and walk for four out of eight hours; and sit for six out of eight hours. The ALJ found the Plaintiff able to occasionally push and pull with the upper extremities; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; not climb ladders; frequently handle but only occasionally finger and feel; not have any exposure to hazards; is limited to simple, routine tasks and occasional contact with supervisors, coworkers, and the public; and is capable of low stress work defined as occasional decision-making and occasional changes in work setting. T. 15.

At step four, based on the record and the testimony of the Vocational Expert, the ALJ found that the Plaintiff was unable to perform any past relevant work. T. 20; see 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, taking into consideration Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that the Plaintiff could perform, e.g., packer, sorter, or checker/inspector. T. 21. The ALJ accordingly found that the plaintiff was not disabled as defined in the Act. T. 21; see 20 CFR §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**C. Plaintiff's Assignments of Error**

The Plaintiff argues that 1) the ALJ failed to consider the severity of Plaintiff's urinary frequency, migraine headaches, post-traumatic stress disorder, and other disorders resulting in

4

RFC findings unsupported by substantial evidence, and 2) the ALJ failed to adequately protect the *pro se* Plaintiff's rights by not developing "evidentiary gaps" in the record. Dkt. #9-1, pp. 14-15, 22.

### D. Scope of Review

A federal district court may set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998)(citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003)(citation omitted).

### E. Plaintiff's Background and Medical History

Plaintiff was born on May 4, 1980 and obtained a high school education. T. 20, 56, 58, 81, 183. She received a cosmetologist's license and her past work includes self-employed part-time manicurist and full-time cosmetologist. T. 20, 58, 59-63, 196-207, 233-254. She was single and had one child. T. 56. She resided in an apartment, and at times lived with her family. T. 56. Plaintiff has been incarcerated for robbery (2012) and has received fines and probation for DWI (2001) and menacing

5

(2010) respectively, all emanating, according to Plaintiff, from her drug abuse. T. 58-59, 271. She received Medicaid and food stamps. T. 61; see Dkt. #9-1, p. 4.

Plaintiff attempted to cut her wrists on April 12, 2010, following a car accident while under the influence of cocaine. T. 306. Following her suicide attempt, Plaintiff saw, Muhammad Cheema, MD, Tammie Raucci, LMSW, and Rachel Ward, LCSW at Rochester Mental Health Center. See Dkt. #9-1, p. 8-10; T. 305-321. Plaintiff reported beginning marijuana use at 13 and cocaine use at 15. T. 316. Plaintiff attended 4 out of 8 scheduled therapy appointments at Rochester Mental Health Center and met twice with Dr. Cheema for medication management between April 12 and July 27, 2010. T. 306.

On September 22, 2010 Plaintiff left a voice message for Rochester Mental Health Center indicating she no longer required their services. Id. At Plaintiff's final meeting on July 27, 2010 with Dr. Cheema, the examining doctor at Rochester Mental Health Center, he found Plaintiff alert and oriented, cooperative and friendly, with a euthymic mood, and appropriate affect congruent with mood. T. 312. Plaintiff denied suicidal or homicidal ideation or psychosis and Plaintiff's judgment was intact. Id. Dr. Cheema gave the impression of "Depressive Disorder [Not Otherwise Specified]" and "Rule out Major Depressive Disorder, recurrent, moderate." Id. There was some indication that Plaintiff might continue to receive treatment

6

through her primary care physician at the time, Leslie Weisbrod, MD, however treatment by Dr. Weisbrod is not shown in the record. See Dkt. #9-1, p. 10.

On January 10, 2012, Plaintiff was evaluated at the Strong Memorial Hospital Pain Center regarding low back and right hip pain. T. 286; Dkt. #9-1, p.11. Cody Mickelsen, MD, examined Plaintiff and reported her past medical history to include exercise-induced asthma, cervical dysplasia, GERD, obesity, depression with prior suicide attempts, and ulnar nerve compression. T. 288. Dr. Mickelsen noted that Plaintiff saw a Dr. Elfar and was scheduled for an ulnar nerve decompression but declined to proceed due to her pregnancy. Id. The Plaintiff reported smoking a half pack per day of cigarettes for the past 16 years. Id. Dr. Mickelsen recommended physical therapy and declined to prescribe Vicodin due to Plaintiff's history of narcotic abuse, but recommended the continued use of NSAIDs and follow-up with Orthopaedics for ulnar nerve compression and the Pain Center for physical therapy and potential injection if physical therapy proved unavailing. T. 288-89.

Plaintiff saw Odysseus Adamides, MD, on June 1, 2012, for a psychiatric evaluation at Wayne Behavioral Health because of increased anxiety due to pending criminal charges and cocaine abuse related to depression. T. 329-338. Dr. Adamides reported that Posttraumatic Stress Disorder would explain and amplify some of Plaintiff's symptoms though Plaintiff declined to

7

discuss with him the abuse that he believed gave rise to the PTSD. T. 337. In addition to PTSD, Dr. Adamides found Cocaine Dependence, Cannabis Abuse in remission, Major Depression, Antisocial Personality Disorder, Chronic pain, gallstones, and neuropathy. Id. Following this one examination, Plaintiff's case was closed with Wayne Behavioral Health due to loss of contact (Plaintiff became incarcerated). Id.

On October 1, 2013, while an inmate at Albion Correctional Facility, Plaintiff was seen by Amy MacDonald, MD, a gynecologist resident from Strong Memorial Hospital. T. 290. Plaintiff complained of chronic pelvic pain, stress urinary incontinence, and urinary frequency. Id. Dr. MacDonald examined plaintiff and recommended a voiding diary, medication, and avoiding bladder irritants such as caffeine and artificial sweeteners. T. 292. Dr. MacDonald saw Plaintiff again on November 25, 2013, and discussed a pessary with Plaintiff, which Plaintiff was interested in, but not until after her incarceration was complete. T. 293. Plaintiff claimed to be keeping a voiding diary but that the guards at the prison would not permit her to bring it. Id. Plaintiff continued drinking multiple cups of coffee and smoking. Id. Dr. MacDonald again recommended avoiding alcohol and caffeine (no more than one caffeinated beverage per day), voiding every 2 hours during the day, normalizing fluid intake to 50 ounces per day on average,

and use of pelvic floor muscle contractions to suppress urinary urgency. T. 294.

On February 20, 2014, Plaintiff saw Charlene Reeves, LMHC, for a preadmission screening at Genesee Mental Health Center. T. 265-67. Plaintiff was scheduled to return on March 13, 2014, but the record does not show a summary of this appointment or future appointments at this facility. T. 266. Plaintiff filed her applications for DIB and SSI on March 8, 2014. T. 183-195.

On April 9, 2014 consultative examiner Kristina Luna, Psy.D. conducted a mental exam of Plaintiff on behalf of the state. T. 270-74; see Dkt. #9-1, p. 4. Plaintiff reported having been seen continually at Genesee Mental Health Center once every two weeks since February 2014. T. 270. Plaintiff's attention and concentration were mildly impaired due to anxiety and nervousness and she failed to perform serial 3s from 20. Id. Plaintiff could only recall 1 of 3 objects after 5 minutes. T. 273. Dr. Luna found the Plaintiff had no limitations in e.g., following simple instructions, but mild limitations in her ability to maintain attention and concentration and deal with stress. Id. Overall Dr. Luna found psychiatric problems not "significant enough to interfere with claimant's ability to function on a daily basis." Id.

On April 9, 2014, Plaintiff was examined by Aharon Wolf, MD, a consultative medical examiner for the state. T. 275-80. Dr. Wolf diagnosed back pain and ulnar nerve entrapment and

9

found Plaintiff had "moderate limitation for repetitive use of bilateral hands when gripping." T. 279.

On May 6, 2014, T. Harding, PhD, state assigned review psychologist, found her psychiatric impairment was non-severe. Dkt. 9-1, p. 5; see T. 84-94.

On January 21, 2015, Harbinder Toor, MD completed a Monroe County Department of Social Services physical assessment for determination of employability. T. 345-49, 357-62. Dr. Toor found Plaintiff to be Very Limited (one to two-hour limit) in walking, standing, pushing, pulling, bending, using hands, and stairs or other climbing, with lifting permissible of 10 lb. occasionally. T. 360. Dr. Toor indicated that Plaintiff was unable to participate in any activities except treatment or rehabilitation for a period of three to six months. T. 361.

On February 20, 2016, Laurence E. Torpey, MD, completed a residual functional capacity physical form for Plaintiff. T. 363-70. Dr. Torpey also completed a mental RFC assessment for Plaintiff. T. 371-74. Dr. Torpey had seen Plaintiff previously for new patient intake on November 2, 2015 and for a "GYN Visit" on January 4, 2016. T. 364. Dr. Torpey reported that he would expect Plaintiff's impairment to last one year or more, and that her impairment would prevent Plaintiff from standing for six to eight hours. T. 365. Dr. Torpey found Plaintiff could not stand for longer than 10 minutes before having to sit. Id. Plaintiff could sit for one hour at a time before having to stand. Id.

This was due to pain in the sacroiliac joint radiating to the buttocks. Id.

Due to back pain, Dr. Torpey found Plaintiff could rarely reach toward the floor, and due to neuropathy of fingers, rarely carefully handle objects. T. 366. Dr. Torpey suggested Plaintiff could work part-time until she had an ulnar release. T. 369. Dr. Torpey opined that the Plaintiff's disability was not likely to change "unless intervention." Id.

On his mental RFC assessment, Dr. Torpey indicated marked limitations in ability to remember locations and work-like procedures, noting "bad at directions;" marked limitation in ability to understand and remember short instructions, noting "telephone numbers." T. 372. Dr. Torpey also noted marked limitations in ability to understand and remember detailed instructions, ability to maintain attention, ability to work in coordination with others, ability to make simple work-related decisions, ability to complete a normal workday, ability to interact with the general public, ability to maintain socially appropriate behavior, ability to be aware of normal hazards, and ability to set realistic goals. T. 373. When asked to record any elaboration or explanation for his summary conclusions, Dr. Torpey left the area blank. T. 374.

## DISCUSSION

**A. Plaintiff Argues the ALJ's Decision is Not Supported by Substantial Evidence and Remand is Warranted**

"Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)(quoting Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)).

Plaintiff first argues that Plaintiff's urinary frequency, migraines, post-traumatic disorder, asthma, chronic pain, and combined effects were not properly addressed by the ALJ in making her RFC findings. However, Plaintiff fails to show how any of these disorders or effects would have necessitated an RFC finding different from that made by the ALJ.

Regarding urinary frequency, the recommendation of Dr. MacDonald, the gynecologist who treated the Plaintiff at Albion Correctional Facility, was to avoid alcohol and caffeine, void every two hours during the daytime, normalize fluid intake to 50 ounces per day on average, and use pelvic floor muscle contractions to suppress urinary urgency. T. 294. None of these would interfere with Plaintiff's ability to perform basic work activities, as required for a finding of a severe impairment. 20 CFR §§ 404.1522, 416.922. In particular, breaks every two hours are considered normal in the workplace and would not have required a more limited finding of available jobs by the Vocational Expert. See SSR 96-9p, 1996 WL 362208 (July 2, 1996)("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position

12

for approximately 6 hours of an 8-hour workday, <u>with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.</u>")(emphasis added). Therefore the ALJ's not having included urinary frequency in her list of severe impairments of the Plaintiff is supported by substantial evidence in the record.

The ALJ considered Plaintiff's testimony regarding migraines several times a week and her statements to Dr. Toor that she had migraines up to three times a week and lasting for days at a time. T. 358. However, Plaintiff did not describe at any time associated symptoms such as photophobia, nausea, dizziness, or vomiting, that may have led to a finding of severe impairment. Therefore, while the ALJ did not consider Plaintiff's migraines severe under the regulations, the ALJ considered the migraines in determining the Plaintiff's RFC. Headaches without severe symptoms for which the Plaintiff takes no medication are not severe under the regulations.

The Plaintiff also alleges that the ALJ failed to properly consider evidence of post-traumatic stress disorder. While Plaintiff acknowledges that "there is no medical opinion related to limitations from PTSD" in the record, Plaintiff argues that some limitation is suggested by the opinion of Dr. Adamides, who evaluated Plaintiff on June 1, 2012 at Wayne Behavioral Health, that Plaintiff "suppressed PTSD through substance abuse, antisocial conduct, and self-destructive behavior; and it

13

amplified her depression." Dkt. #9-1, p. 18. Even if Dr. Adamides's opinion had been given significant weight, the alleged limitations from PTSD: substance abuse, antisocial conduct, self-destructive behavior, and depression, are covered adequately by the ALJ's findings regarding severe impairments and considered by the ALJ in making her RFC determination. Polysubstance abuse, personality disorder, bipolar disorder, and generalized anxiety disorder were all found to be severe by the ALJ. In the ALJ's RFC determination, the ALJ found that, while the Plaintiff "at times showed symptoms including a depressed or irregular mood, she also had a euthymic mood in May 2012 and generally intact memory, good concentration, and fair to good insight and judgment in February 2014." Dkt #15-1, p.10 (citing T. 17-18, 266, 272-73, 334, 337).

Similar to the ALJ's treatment of Plaintiff's migraine headaches, the ALJ fully considered Plaintiff's asthma symptoms at step two and in determining the RFC. Plaintiff fails to show how her asthma should have changed the RFC determination. Plaintiff's asthma has never been severe enough to require emergency treatment according to Dr. Toor, and Dr. Wolf noted that the claimant had clear lungs and normal movement of the diaphragm. T. 278, 358. Therefore, the ALJ's findings regarding lack of severity of asthma are supported by substantial evidence in the record.

This Court also finds that Plaintiff's chronic pain was considered by the ALJ at step two and during the RFC findings at step four. The ALJ considered and found severe impairments due to ulnar neuropathy, degenerative disc disease, and sacroiliitis, which according to the record, were the causes of Plaintiff's chronic pain. T. 13. Additionally, Plaintiff's pain was discussed in detail throughout the ALJ's determination of her RFC findings. T. 15-20.

The ALJ considered all symptoms and the extent to which those symptoms, along with other evidence in determining her RFC, were based on the requirements of 20 CFR §§ 404.1529 and 416.929 and SSR 96-4P. T. 15. As the Commissioner points out, the ALJ "need not discuss every possible factor." Dkt. #15-1, p.11 (citing Delk v. Astrue, 2009 WL 656319 (W.D.N.Y. Mar 11, 2009)("Although his findings do not explicitly indicate whether he considered each of the factors..., the court finds the reasons given by the ALJ sufficiently specific...."). The ALJ carefully weighed the opinions, giving lighter weight not only to the marked mental limitations findings of Dr. Torpey, who was not a psychiatric specialist, but also to the mild mental limitations findings of Dr. Harding, who never examined the Plaintiff. T. 19-20. In sum, the ALJ justified her weighing of the various opinions and Plaintiff's complaints of limitations and supported her findings with substantial evidence. T. 15-18. Plaintiff's claim that the ALJ's failure to name specific severe

impairments at step two results in a lack of substantial evidence for the ALJ's RFC findings is unsupported by the record.

**B. ALJ'S DUTY TO DEVELOP THE RECORD**

Plaintiff also argues that the ALJ erred by failing to fulfill her regulatory duty to develop the record by not re-contacting the sources of opinions to which she gave lesser weight in her analysis due to their lack of supporting observations. Plaintiff argues that this duty is of heightened importance to this case because Plaintiff appeared *pro se* at her hearing. In particular, Plaintiff cites Thompson v. Sullivan, a Seventh Circuit case, that "...when a claimant appears at his or her hearing before an ALJ without representation, the ALJ has a heightened duty to assist Plaintiff with developing the record by 'scrupulously and conscientiously' probing and exploring 'for all relevant facts.'" Dkt. #9-1, p. 23 (quoting Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir. 1991)); see also Gold v. Secretary of Health, Ed. and Welfare, 463 F.2d 38, 43 (2d Cir. 1972).

However, the actions of the ALJ in Gold are distinguishable from the actions of the ALJ in the present case. In Gold, "the examiner did not suggest when [claimant] appeared alone, that she obtain legal aid," and showed "intolerance of [claimant's] confusion." Id. at 43.

16

In the present case, the ALJ carefully discussed the benefit of representation with the Plaintiff and gave her an almost three-month postponement of her case to obtain counsel:

> [B]efore we go any further, I want to discuss with you your right to representation in a Social Security disability hearing. You have the right to be represented by an attorney or by a non-attorney who is familiar with Social Security disability law. A representative can be helpful in a number of ways. He or she can assist you in gathering together the documents that are necessary to support your claim and a representative can also assist you in presenting your claim at the hearing. ... Because I can see your record that it looks like there's only medical records in here really that go up to 2014, and it appears that from what you just submitted a couple weeks ago, that you are seeing doctors and receiving medical treatment since then, is that correct? ... So would you like me to grant you a postponement so that you'll have an opportunity to obtain a representative to help you gather together all the evidence and help you with the hearing?

T. 45. The ALJ carefully explained to the Plaintiff the lack of evidence in the file, guided her on how to obtain and present the evidence, and made photocopies of additional evidence the Plaintiff brought with her. Her case was postponed until May 13, 2016. T. 46, 47.

The burden of establishing disability through evidence falls on the Plaintiff. 20 CFR §§ 404.1512, 416.912. This burden includes an ongoing duty to inform the agency about or submit all evidence that relates to whether or not the Plaintiff is disabled. Id. The record reflects that the agency contacted the providers listed by the Plaintiff, ordered consultative

examinations, and offered the help of the hearing office in retrieving evidence. See T. 111-113, 215-217, 244-245, 255, 260, 270-280. Of note, the Plaintiff has not submitted new evidence that would undermine the ALJ's determination, but argues that such evidence could be "logically deduced" to exist. Dkt. #9-1, pp. 26-27. If such evidence existed it was incumbent upon the Plaintiff to provide it or notify the agency of its existence, not the ALJ to infer its existence. Plaintiff had the assistance of counsel who submitted on her behalf a detailed memorandum of law of 29 pages on July 11, 2018.

Regarding any duty of the ALJ to extract more detailed analysis specifically from Dr. Torpey, the Plaintiff points to Cruz v. Sullivan and the Second Circuit's admonition that "[w]e have repeatedly stated that when the ALJ rejects the findings of a treating physician because they were conclusory or not supported by specific clinical findings, [the ALJ] should direct a *pro se* claimant to obtain a more detailed statement from the treating physician." Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990). However, as the Commissioner points out, Dr. Torpey was not a treating physician within the meaning of the regulations. Dr. Torpey saw Plaintiff only twice before rendering his opinion. T. 19, 364. Therefore, Dr. Torpey "did not have a longitudinal view of Plaintiff's alleged impairments and was not

a treating source under the regulations." Dkt #15-1, p. 12; 20 CFR §§ 404.1527(a)(2), 416.927(a)(2).

While the Second Circuit has been clear that it is necessary to direct a *pro se* Plaintiff to recontact a treating physician whose findings are discounted due to their conclusory nature, it is less clear that Dr. Torpey, a non-treating physician, needed to be recontacted. Notably, Dr. Torpey had sufficient opportunity to elaborate on his summary conclusions and declined to do so. T. 374. Because Dr. Torpey's opinion was not that of a treating physician "the relevant inquiry is whether the record was sufficient to support the ALJ's RFC assessment." Jasen v. Commissioner of Social Security, 2017 WL 3722454, *12 (W.D.N.Y. 2017)(quoting Ayers v. Astrue, 2009 WL 4571840, *2 (W.D.N.Y. 2009). Any gap created by Dr. Torpey's failure to explain his conclusions was provided for by the other opinions and the medical record relied upon by the ALJ.

The ALJ's conclusions as to the Plaintiff's disability and the RFC finding are all supported by the complete medical record and Plaintiff's testimony given at her hearing. Although Plaintiff's attorney was not present at the adjourned hearing or the hearing on May 13, 2016, Plaintiff's position was carefully and thoroughly presented in her attorney's brief dated July 11, 2018.

**CONCLUSION**

For the foregoing reasons, this Court finds that the Commissioner's decision is free of legal error and is supported by substantial evidence and it is therefore affirmed. Plaintiff's motion for judgment on the pleadings is denied and the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           January 29, 2019